UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Sydney Ellerbe<br>*doing business as*<br>Wall Street World Inc.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Tuscan Highlands Apartments,<br><br>　　　　　Defendant. | Case No. 2:24-cv-00554-APG-DJA<br><br>**Order** |

　　　　*Pro se* Plaintiff Sydney Ellerbe dba Wall Street World Inc.[1] submitted initiating documents to the Court which include an application to proceed *in forma pauperis* and a complaint. (ECF Nos. 1-1, 4). Because Plaintiff's application is complete, the Court grants it and screens Plaintiff's complaint. Because Plaintiff's complaint states certain claims that are not

---

[1] It is unclear if Plaintiff is bringing his claims on behalf of himself and Wall Street World Inc., or just on his own behalf. Because non-lawyers cannot generally represent companies *pro se*, and because Plaintiff does not inform the Court about whether Wall Street World fits an exception to this general rule, the Court construes Plaintiff as bringing his claims on his own behalf. If Plaintiff wishes to bring his claims on behalf of Wall Street World, he must explain whether the company is a corporation, unincorporated association, sole proprietorship, or some other entity. This is because while parties may represent themselves, corporations, partnerships, and associations must appear in federal court through an attorney. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) (citations omitted) ("courts have uniformly held that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney."). So, Wall Street World Inc. must retain counsel to proceed in this action if it is a corporation. *See Reading Intern., Inc. v. Malulani Group, Ltd.*, 814 F.3d 1046, 1053 (9th Cir. 2016) (explaining that corporations must be represented by counsel). On the other hand, if Wall Street World is a sole proprietorship, Plaintiff may be able to litigate its claims. *See Pullos v. All. Laundry Sys., LLC*, No. 3:07-cv-00169-LRH-RAM, 2009 WL 10708625, at *1 n.2 (D. Nev. July 29, 2009), *aff'd*, 424 F. App'x 663 (9th Cir. 2011) (stating that "numerous courts have recognized that because a sole proprietorship has no separate legal existence apart from the sole proprietor, a sole proprietor may litigate claims on behalf of his or her company *pro se*.").

cognizable, but others that are, the Court dismisses some claims without prejudice and allows others to proceed. Because it is possible that Plaintiff may be able to adequately allege those claims, if sufficient facts exist, the Court will grant leave to amend the pleading deficiencies.

### I.   *In forma pauperis* application.

Plaintiff filed the forms required to proceed *in forma pauperis* (without paying the filing fee). (ECF No. 4). Plaintiff has shown an inability to prepay fees and costs or give security for them. Accordingly, the application to proceed *in forma pauperis* will be granted under 28 U.S.C. § 1915(a). The Court will now screen Plaintiff's complaint.

### II.   Legal standard for screening.

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory

allegations, do not suffice. *Id.* at 678. Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law. *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states." Diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

**III.   Screening Plaintiff's complaint.**

Plaintiff sues Defendant Tuscan Highland Apartments for damages and injunctive relief, alleging four causes of action: (1) negligence; (2) wrongful eviction under Nevada law; (3) disparate treatment under 42 U.S.C. § 3604(b) of the Fair Housing Act ("FHA"); and (4) defamation *per se* under Nevada law.[2] Plaintiff's claims arise out of his eviction from his

---

[2] Plaintiff asserts that his complaint is "for racial discrimination & defamation of character." (ECF No. 1-1 at 1). Later in his complaint, he asserts that he is bringing a claim against Defendant for unethical and negligent decision making. (*Id.* at 5). The Court liberally construes

home in the Tuscan Highland Apartments following two instances in which Becca's Restaurant & Lounge dba Scotty's Restaurant & Lounge[3] —a private restaurant located within the Tuscan community—removed him from the premises in racially motivated incidents. Plaintiff asserts that Tuscan evicted him—citing a false reason—to cover up the racially motivated events.

Plaintiff—an African American man—alleges that a Becca's employee removed him on two separate instances while Plaintiff was dining. During the first incident, Plaintiff claims that a Becca's employee asked him to leave because a white female patron was jealous of Plaintiff dining with another woman. During the second incident, a Becca's employee removed Plaintiff from the restaurant following an altercation in which another white patron threatened Plaintiff and made racist remarks. Plaintiff asserts that, despite him not being the aggressor in either incident, he was the person removed from the premises.

Plaintiff argues that these racial incidents are the true cause of his subsequent eviction from Tuscan's property. Three days after the second incident, Tuscan's office manager served Plaintiff with a three-day notice to quit for nuisance based on an allegation from another community member—Josh[4]—that Plaintiff had assaulted him. Plaintiff asserts that Josh's allegation was false, and that Tuscan should have known it was false, but instead Tuscan used the allegation as an excuse to evict him to cover up the racial incidents that occurred at Becca's. Plaintiff asserts that Josh provided no evidence of the assault, never called the police, never

---

Plaintiff's complaint as alleging negligence under Nevada law, defamation *per se* under Nevada law, wrongful eviction under Nevada law, and disparate treatment under 42 U.S.C. § 3604(b) of the Fair Housing Act.

[3] Plaintiff filed a separate lawsuit against Becca's alleging the same facts but does not name Becca's as a defendant here. *See Ellerbe v. Becca's Restaurant & Sports Lounge dba Scotty's Restaurant & Lounge*, 2:24-cv-00555-JAD-DJA (D. Nev.). Becca's is a private restaurant located within the property with which Plaintiff alleges Tuscan contracts for catering and resident events. (ECF No. 1-3 Ex. A). Plaintiff asserts that tenants' rent payments to Tuscan include a monthly lifestyle fee for Becca's. (ECF No. 1-1). Plaintiff also alleges that Tuscan and Becca's are owned by the same entity—Schulman Properties—and includes an attachment purporting to show that ownership. (ECF No. 1-3 at 18). However, given the fact that Plaintiff has sued Becca's and Tuscan separately and only briefly raises the issue of their alleged joint ownership, the Court does not construe Becca's and Tuscan to be the same entity.

[4] Plaintiff does not provide a last name for this individual or name this individual as a defendant.

1 received medical attention, never filed charges, and had a known history of mental health
2 problems that made him an unreliable source. Worse, Plaintiff later witnessed another
3 community member being arrested for domestic violence, but when Plaintiff asked the Tuscan
4 leasing manager if that community member would be evicted, the manager said, "[t]hat's a
5 criminal offense, and has nothing to do with Tuscan Highland's Apartments." (ECF No. 1-1 at
6 4). Plaintiff also compares Tuscan's quick and extreme response to Josh's unsupported
7 allegations with Tuscan's slow or nonexistent response to his complaints—the latter of which was
8 supported by witnesses—about Becca's choice to remove him from the restaurant. Finally,
9 Plaintiff alleges that, after the racial incidents, Tuscan raised his rent and attempted to collect a
10 past due balance despite Tuscan and Plaintiff's former agreement that Plaintiff would pay a lower
11 rate if he paid in advance. Plaintiff asserts that his eviction has resulted in him losing business
12 clients because many of his clients were also Tuscan residents and heard that Plaintiff was evicted
13 for an alleged assault.

### A. Negligence.

"Negligence is failure to exercise that degree of care in a given situation which a reasonable man under similar circumstances would exercise." *Driscoll v. Erreguible*, 87 Nev. 97, 101 (1971). To prevail on a negligence claim under Nevada law, a plaintiff must establish four elements: "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Evans v. Hawes*, No. 2:22-cv-02171-JAD-DJA, 2024 WL 810886, at *14 (D. Nev. Feb. 26, 2024). "[L]iability based on negligence does not exist in the absence of a breach of duty." *Bradshaw v. Blystone Equip. Co. of Nev.*, 79 Nev. 441, 444 (1963).

Plaintiff's negligence claim fails as a matter of law for two reasons. First, Plaintiff fails to establish what duty, if any, Tuscan owes him and second, Plaintiff's allegations are largely conclusory. Plaintiff alleges that Tuscan's series of decisions following the racial altercation at Becca's and leading up to his eviction are negligent and have resulted in substantial business

decline and damage to his character.[5]  Although Plaintiff states what damages that he has suffered, his claim fails because he does not articulate how Tuscan's actions fulfill the other elements necessary to state a claim for negligence.  To prevail on his negligence claim, Plaintiff must show for every negligent act alleged that Tuscan owed him a duty of care, that Tuscan breached that duty, that the breach was the legal cause of his injuries, and that he suffered damages.

Under Rule 8, the Court must accept as true all well-pled factual allegations contained in the complaint, which goes beyond mere labels or conclusions.  Here, Plaintiff describes the general sequence of events that are connected to his eviction and professional harm, but he does not identify any specific act or acts that clarify what duty—if any—Tuscan owed Plaintiff and when the moment of breach occurred.  As currently pleaded, Plaintiff's assertions amount to a conclusory allegation of negligence from which the Court cannot reasonably infer that Tuscan's conduct fell below the applicable standard of care.  Because Plaintiff could potentially amend his complaint to do so, the Court dismisses Plaintiff's complaint without prejudice and with leave to amend.

### B. *Wrongful eviction in violation of NRS 118A.390.*

Plaintiff appears to bring a state claim for wrongful eviction in violation of NRS 118A.390.  A tenant may recover damages pursuant to NRS 118A.390(1) "[i]f the landlord unlawfully removes the tenant from the premises or excludes the tenant by blocking or attempting to block the tenant's entry upon the premises, willfully interrupts or causes or permits the interruption of any essential item or service..."  Here, Plaintiff states a colorable claim for wrongful eviction under NRS 118A.390.  Plaintiff alleges that he was unlawfully evicted because

---

[5] Plaintiff alleges that Schulman Properties is the decision-maker for Defendant and Becca's and asserts that Schulman Properties is responsible for its employee's negligent management of Becca's.  However, Plaintiff has not named Schulman Properties as a defendant and as outlined above, has not provided sufficient facts for the Court to determine that Schulman owns both companies.  This is particularly true because Plaintiff has named both companies in separate lawsuits.  To the extent that Plaintiff wishes to bring his negligence claim against Schulman Properties under a respondeat superior theory, Plaintiff must name Schulman Properties as a party to the action in an amended complaint.

Tuscan relied on another tenant's false allegations to remove him from the property as a cover-up for discriminatory conduct. Plaintiff renewed his lease with Tuscan in February of 2022 and thus had a landlord-tenant relationship with Tuscan when he received an eviction notice on his apartment door in August of 2022. As a result of the eviction notice, Tuscan blocked Plaintiff's entry upon the premises. Therefore, the Court finds that Plaintiff provides sufficient facts to state a claim for relief under NRS 118A.390.

### C. Disparate treatment in violation of the FHA.

The Court liberally construes Plaintiff's complaint as bringing a disparate treatment claim under the FHA.[6] That Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Because Plaintiff alleges that Tuscan relied on false assault allegations to disguise underlying discrimination as a lawful eviction, Plaintiff has sufficiently alleged a cognizable legal claim under the FHA.

To bring a disparate treatment claim, the plaintiff bears the burden of establishing a *prima facie* case of discrimination, which a plaintiff may accomplish by one of two methods. *See Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) (explaining that courts analyze FHA discrimination claims in the same way they analyze Title VII discrimination claims); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (*en banc*), *aff'd*, 539 U.S. 90 (2003); *see Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). Under the first—the *McDonnell Douglas*[7] framework—a plaintiff can establish a prima facie case by showing that

---

[6] A plaintiff can establish an FHA discrimination claim under a theory of disparate treatment or disparate impact. *Gamble v. City of Escondido*, 104 F.3d 300, 304–05 (9th Cir. 1997). Under the disparate impact theory, the FHA "forbids actions by private or governmental bodies that create a discriminatory effect upon a protected class or perpetuate housing segregation without any concomitant legitimate reason." *Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 503 (9th Cir. 2016).

[7] This refers to the burden-shifting framework that the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that test, once a plaintiff establishes a

"(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999). Under the second, a plaintiff can establish a *prima facie* case by showing direct or circumstantial evidence of discriminatory intent. *See Pac. Shores Properties*, 730 F.3d at 1158; *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

Here, under either method, Plaintiff has established a *prima facie* case of disparate treatment under the FHA. Under the first method, Plaintiff alleges that Tuscan intentionally discriminated against him because of his race, which is one of the protected classes under the FHA. Plaintiff also alleges he has suffered a distinct and palpable injury because he claims that he has been evicted, that he has faced reputational harm, and that his business has lost a substantial amount of revenue.

Under the second method, Plaintiff has demonstrated that racial animus was a motivating factor behind Tuscan's actions and offers circumstantial evidence of Tuscan's discriminatory intent. Plaintiff explains that Tuscan's proffered reason for evicting him—that Plaintiff assaulted a fellow resident—was false. Plaintiff asserts that this was because the resident who reported the assault lied about it, and Tuscan should have known that the resident was an unreliable source because of the resident's well known mental health problems. Plaintiff adds that Tuscan lacked any proof for the assault allegations on which it based its eviction decision and when Plaintiff insisted that the allegations were false, the Tuscan office manager with whom he was speaking stated "[i]t doesn't matter, we want you out [of] our community." Plaintiff also points out the timing of the assault allegations, arguing that the allegations were not brought to his attention until after Tuscan's management received reports of the underlying racial altercation at Becca's.

Plaintiff also identifies similarly situated individuals who were treated more favorably than him. For example, Plaintiff compares Tuscan's delayed response to his reports regarding the racial altercation at Becca's with Tuscan's swift response to the false assault allegation. Despite

---

*prima facie* case of discrimination, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the defendant's actions. *See id.* The burden then shifts back to the plaintiff to show that the defendants' stated reason is pretext. *See id.* at 804.

Plaintiff's reports and reports from witnesses, Tuscan did nothing in response to the racial altercations. However, the resident who alleged that Plaintiff assaulted him provided no evidence, never called the police, did not receive medical attention, and did not file criminal charges, yet Tuscan responded by evicting Plaintiff. Plaintiff contrasts this with an incident in which another community member was arrested publicly for assaulting his spouse. When Plaintiff asked if the arrested community member would be evicted, the Tuscan leasing manager stated "[t]hat's a criminal offense and has nothing to do with Tuscan Highlands Apartments." (ECF No. 1-1 at 4). Finally, Plaintiff claims that he has a great relationship with other neighbors and tenants. Considering the allegations in the complaint in their entirety, and interpreting all inferences in favor of Plaintiff, the Court concludes Plaintiff has alleged sufficient facts to state a claim of disparate treatment under 42 U.S.C. § 3604(b) of the FHA.

### D.     *Defamation per se.*

Defamation encompasses both slander (spoken) and libel (written) defamatory statements. *Flowers v. Carville*, 292 F.Supp.2d 1225, 1232 n.1 (D. Nev. 2003). To state a claim for defamation, Plaintiff must allege the following elements "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Rosen v. Tarkanian*, 453 P.3d 1220, 1225 (Nev. 2019); *see also* Nev. Rev. Stat. § 200.510(1) (defining libel). Whether a statement is capable of a defamatory construction is a question of law for the court to decide. *Branda v. Sanford*, 97 Nev. 643, 646 (1981). "A statement is defamatory when, '[u]nder any reasonable definition[,] such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt.'" *Posadas v. City of Reno*, 109 Nev. 448, 453 (1993) (*quoting Las Vegas Sun v. Franklin*, 74 Nev. 282, 287 (1958)). "In determining whether a statement is actionable for the purposes of a defamation suit, the court must ask whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 715 (2002) (internal citations omitted).

1   Some classes of defamatory statements—known as "defamation *per se*"—are considered so likely to cause serious injury to reputation and pecuniary loss that these statements are actionable without proof of damages. *K-Mart Corp. v. Washington*, 866 P.2d 274, 284 (Nev. 1993) (overruled in part on other grounds). A statement is considered defamation per se, "i.e., actionable without a showing of such special damages only if it falls into one of usually four categories: (1) imputations that plaintiff has committed a crime; (2) imputations that would injure plaintiff's trade, business or office; (3) imputations that the plaintiff has contracted a loathsome disease; and… (4) imputations of unchastity in a woman." *Branda*, 97 Nev. at 646.

Plaintiff alleges that Tuscan falsely stated that Plaintiff assaulted another tenant, which would constitute defamation *per se* because it imputes that Plaintiff committed a crime. However, Plaintiff does not allege that Tuscan made an unprivileged publication of these statements, which is an element of a claim for defamation. Plaintiff does not allege this element because, although he asserts that certain community members heard the false statements, he does not allege that they heard them from Tuscan. Thus, the Court finds that Plaintiff fails to state a claim for defamation *per se*.

## **ORDER**

**IT IS THEREFORE ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 1) is **granted.** Plaintiff shall not be required to pre-pay the filing fee. Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of any additional fees or costs or the giving of a security therefor. This order granting leave to proceed *in forma pauperis* shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file Plaintiff's complaint (ECF No. 1-1) on the docket and issue summons to Tuscan Highlands Apartments.

**IT IS FURTHER ORDERED** that:

- Plaintiff' disparate treatment claim in violation of 42 U.S.C. § 3604(b) of the FHA shall proceed against Tuscan Highlands Apartments.

Case 2:24-cv-00554-APG-DJA    Document 5    Filed 07/26/24    Page 11 of 12

- Plaintiff's wrongful eviction claim in violation of NRS 118A.390 shall proceed against Tuscan Highlands Apartments.
- Plaintiff's negligence claim is dismissed without prejudice.
- Plaintiff's defamation *per se* claim is dismissed without prejudice.

**IT IS FURTHER ORDERED** that service must be accomplished on or before **October 23, 2024**. *See* Fed. R. Civ. P. 4(m).

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to deliver the following to the U.S. Marshals Service: (1) a copy of the complaint (ECF Nos. 1-1, 1-2, 1-3); and (2) a copy of this order.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to send Plaintiff a blank copy of form USM-285[8] and a copy of the summons to Tuscan Highlands Apartments.

**IT IS FURTHER ORDERED** that Plaintiff must complete a USM-285 form for Tuscan Highlands Apartments and provide an address where Tuscan Highlands Apartments can be served with process. Plaintiff must also complete the summons to Tuscan Highlands Apartments. Once completed, Plaintiff must provide the USM-285 form and the summons to the U.S. Marshals Service. Plaintiff shall have until **August 15, 2024** in which to furnish the U.S. Marshals Service with the required forms.

**IT IS FURTHER ORDERED** that upon receipt of the issued summonses, the USM-285 forms, and the operative complaint—and pursuant to Federal Rule of Civil Procedure 4(c)(3)—the U.S. Marshals Service shall attempt service upon Tuscan Highlands Apartments.

**IT IS FURTHER ORDERED** that, within twenty-one days after receiving from the U.S. Marshals Service a copy of the form USM-285 showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying whether the Defendant was served. If Plaintiff wishes to have service again attempted on an unserved Defendant, he must file a motion

---

[8] The USM-285 form is also available at: https://www.usmarshals.gov/resources/forms/usm-285-us-marshals-process-receipt-and-return.

with the Court identifying the unserved Defendant and specifying a more detailed name and/or address for said Defendant or whether some other manner of service should be attempted.

**IT IS FURTHER ORDERED** that from this point forward, Plaintiff shall serve upon Defendant, or, if appearance has been entered by counsel, upon the attorney(s), a copy of every pleading, motion, or other document submitted for consideration by the Court. Plaintiff shall include with the original papers submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to Defendants or counsel for Defendants. The Court may disregard any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk, and any paper received by a District Judge, Magistrate Judge, or the Clerk that fails to include a certificate of service.

DATED: July 26, 2024

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE