1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Sydney Ellerbe,

               Plaintiff,

    v.

Tuscan Highlands, LLC; Schulman Properties; and Winnie Schulman,

              Defendants.

Case No. 2:24-cv-00554-APG-DJA

**Order**

Before the Court is *pro se* Plaintiff Sydney Ellerbe's amended complaint. (ECF No. 9). Plaintiff is proceeding *in forma pauperis* under 28 U.S.C. § 1915, so the Court screens his amended complaint. The Court dismisses certain of Plaintiff's claims and allows others to proceed and orders service of Plaintiff's amended complaint.

**I.    Legal standard for screening.**

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of

1   the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp.*

2   *v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual

3   allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the

4   elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v.*

5   *Allain*, 478 U.S. 265, 286 (1986)).  The court must accept as true all well-pled factual allegations

6   contained in the complaint, but the same requirement does not apply to legal conclusions.  *Iqbal*,

7   556 U.S. at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory

8   allegations, do not suffice.  *Id.* at 678.  Where the claims in the complaint have not crossed the

9   line from conceivable to plausible, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570.

10  Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings

11  drafted by lawyers.  *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal

12  construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

13          Federal courts are courts of limited jurisdiction and possess only that power authorized by

14  the Constitution and statute.  *See Rasul v. Bush*, 542 U.S. 466, 489 (2004).  Under 28 U.S.C.

15  § 1331, federal courts have original jurisdiction over "all civil actions arising under the

16  Constitution, laws, or treaties of the United States."  Cases "arise under" federal law either when

17  federal law creates the cause of action or where the vindication of a right under state law

18  necessarily turns on the construction of federal law.  *Republican Party of Guam v. Gutierrez*, 277

19  F.3d 1086, 1088-89 (9th Cir. 2002).  Whether federal-question jurisdiction exists is based on the

20  "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a

21  federal question is presented on the face of the plaintiff's properly pleaded complaint."

22  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under 28 U.S.C. § 1332(a), federal

23  district courts have original jurisdiction over civil actions in diversity cases "where the matter in

24  controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of

25  different states."  Diversity jurisdiction exists only where there is "complete diversity" among the

26  parties; each of the plaintiffs must be a citizen of a different state than each of the defendants.

27  *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

28

**II.    Screening Plaintiff's complaint.**

Plaintiff sues Defendant Tuscan Highlands LLC; Schulman Properties; and Winnie Schulman for damages and injunctive relief, alleging six causes of action: (1) wrongful eviction in violation of NRS 118A.390; (2) constructive eviction; (3) disparate treatment in violation of the Fair Housing Act; (4) disparate impact in violation of the Fair Housing Act; (5) negligence; and (6) defamation. (ECF No. 9). Plaintiff brings each of his claims against all three Defendants. Plaintiff's claims arise out of his eviction from his home in the Tuscan Highlands community following two instances in which Becca's Restaurant & Lounge dba Scotty's Restaurant & Lounge —a restaurant located within the Tuscan community—removed him from the premises in racially motivated incidents. (*Id.*). Plaintiff asserts that Tuscan evicted him—citing a false reason—to cover up the racially motivated events. Plaintiff alleges that, Winnie Schulman and Schulman Properties were the decision makers for both Tuscan and Becca's.[1] (*Id.*).

Plaintiff—an African American man—alleges that a Becca's employee removed him on two separate instances while Plaintiff was dining. (*Id.*). During the first incident, which took place on February 27, 2022, Plaintiff claims that a Becca's employee asked him to leave because a white female patron was jealous of Plaintiff dining with another woman. (*Id.* at 2-3). Plaintiff reported the incident to Winnie Schulman on February 28, 2022, the day after the first incident. (*Id.* at 3). She told him that Becca's and Tuscan are two separate entities, which Plaintiff claims is belied by the Nevada Secretary of State website, which shows that Winnie Schulman and Schulman Properties are the decisionmakers for both. (*Id.* at 3, 8). Plaintiff claims that another

---

[1] Plaintiff refers to Winnie Schulman, Schulman Properties, and Tuscan interchangeably. For the purposes of screening, the Court assumes, as Plaintiff does, that Schulman Properties and Tuscan are the same entity. The Court also liberally construes Plaintiff's allegations against Tuscan and Schulman Properties as being brought against Winnie Schulman as a corporate officer. Plaintiff does not specifically allege Winnie Schulman's role at Schulman Properties. But, given the similarity in their names and the fact that Plaintiff refers to her as a decisionmaker, the Court can liberally construe that she is a corporate officer for Schulman Properties and thus, taking Plaintiff's allegations as true, for Tuscan. Additionally, "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Committee for Idaho's High Desert, Inc. v.* Yost, 92 F.3d 814, 823 (9th Cir. 1996).

employee later sent him a written response through the Tuscan community portal stating, "[t]hank you for taking the time to meet with myself and Winnie last Friday…[w]hile I sympathize with your situation, I believe that alcohol and jealousy caused this incident to elevate."  (*Id.* at 3).  But Plaintiff claims that Winnie Schulman, Schulman Properties, and Tuscan later "approved and publish[ed] a false narrative" that,

> In February of 2022, you conducted yourself in a disruptive manner at the community restaurant establishments.  This incident included you using profane language, being intoxicated, behaving in an obnoxious manner and communicating with both the staff at the establishment and neighboring tenants in [a] disrespectful manner.

(*Id.* at 8).

Plaintiff does not explain where or to whom Defendants published this amended narrative of the February incident.

The second incident took place on May 25, 2022, when a Becca's employee removed Plaintiff from the restaurant following an altercation in which another white patron threatened Plaintiff and made racist remarks.  (*Id.* at 3-4).  Plaintiff asserts that, despite him not being the aggressor, he was the person removed from the premises.  (*Id.*).  Plaintiff immediately reported the incident to a Tuscan community security guard, who promised to file a report.  (*Id.* at 4).  A witness to the event also promised Plaintiff to email Tuscan with a complaint on Plaintiff's behalf.  (*Id.* at 4-5).  Plaintiff then complained to a Tuscan apartment manager on May 26, 2022.  (*Id.*).

However, instead of addressing Plaintiff's complaints, Plaintiff alleges that Defendants evicted him to cover up the racist incidents.   Three days after the second incident, on May 28, 2022, Tuscan's office manager served Plaintiff with a three-day notice to quit for nuisance based on an allegation from another community member—Josh[2]—that Plaintiff had assaulted him.  (*Id.* at 5-6).  Plaintiff asserts that Josh's allegation was false, and that Defendants should have known it was false, but instead Defendants used the allegation as an excuse to evict him to cover up the

---

[2] Plaintiff does not provide a last name for this individual or name this individual as a defendant.

1   racial incidents that occurred at Becca's. (*Id.*). Plaintiff asserts that Josh provided no evidence of

2   the assault, never called the police, never received medical attention, never filed charges, and had

3   a known history of mental health problems that made him an unreliable source. (*Id.* at 6-7).

4   Plaintiff alleges that the notice to quit included false statements published by Defendants that

5   Plaintiff had physically assaulted a resident. (*Id.* at 9). Plaintiff insisted to the Tuscan office

6   manager that he did not assault Josh, but the office manager simply stated "[i]t doesn't matter, we

7   want you out of our community." (*Id.*).

8          In July of 2022, Plaintiff witnessed another community member being arrested for

9   domestic violence, but when Plaintiff asked the Tuscan leasing manager if that community

10  member would be evicted, the manager said, "[t]hat's a criminal offense, and has nothing to do

11  with Tuscan Highland Apartment[s]." (*Id.* at 7-8). Plaintiff also compares Defendants' quick and

12  extreme response to Josh's unsupported allegations with Defendants' slow or nonexistent

13  response to his complaints—the latter of which was supported by witnesses—about Becca's

14  choice to remove him from the restaurant. (*Id.* at 6-7).

15         After receiving the eviction notice, Plaintiff alleges that Defendants raised his rent in June

16  of 2022, and attempted to collect a past due balance despite Defendants' and Plaintiff's former

17  agreement that Plaintiff would pay a lower rate if he paid in advance. (*Id.* at 7). On August 30,

18  2022, Defendants placed an eviction notice on his door and locked him out of his unit. (*Id.*).

19  Plaintiff alleges that his neighbor saw the notice. (*Id.*). Plaintiff alleges that Defendants

20  ultimately forcibly evicted him in September of 2022. (*Id.*). Plaintiff alleges that Defendants

21  reported the eviction to credit agencies, impacting Plaintiff's credit score and his ability to find

22  subsequent housing. (*Id.*). Plaintiff also alleges that his lowered credit score has prevented him

23  from obtaining business loans. (*Id.*).

24         ***A.    Wrongful eviction in violation of NRS 118A.390.***

25         A tenant may recover damages pursuant to NRS 118A.390(1) "[i]f the landlord unlawfully

26  removes the tenant from the premises or excludes the tenant by blocking or attempting to block

27  the tenant's entry upon the premises, willfully interrupts or causes or permits the interruption of

28  any essential item or service..." Here, Plaintiff states a colorable claim for wrongful eviction

against Defendants under NRS 118A.390. Plaintiff alleges that he was unlawfully evicted because Defendants relied on another tenant's false allegations to remove him from the Tuscan property as a cover-up for discriminatory conduct. Plaintiff renewed his lease with Defendants in February of 2022 and thus had a landlord-tenant relationship with Defendants when he received an eviction notice on his apartment door in August of 2022, and encountered his door locked, blocking his entry. Therefore, the Court finds that Plaintiff provides sufficient facts to state a claim for relief under NRS 118A.390

### B.    Constructive eviction.

A claim for constructive eviction has four elements. *Mason-McDuffie Real Estate, Inc. v. Villa Fiore Development, LLC*, 335 P.3d 211, 214-15 (Nev. 2014). First, the landlord must either act or fail to act. *Id.* Second, the landlord's action or inaction must render the whole or a substantial part of the premises unfit for occupancy for the purpose for which it was leased. *Id.* Third, the tenant must actually vacate the premises within a reasonable time. *Id.* Fourth, the landlord must have had notice of and a reasonable opportunity to cure the defect. *Id.* at 215.

Here, Plaintiff does not allege a claim of constructive eviction. He does not allege that Defendants acted or failed to act in a way to render the premises unfit for occupancy. Instead, he alleges that the Defendants actually evicted him. The Court thus dismisses Plaintiff's constructive eviction claim without prejudice.

### C.    Disparate treatment in violation of the Fair Housing Act.

The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Because Plaintiff alleges that Defendants relied on false assault allegations to disguise underlying discrimination as a lawful eviction, Plaintiff has sufficiently alleged a cognizable legal claim under the FHA.

To bring a disparate treatment claim, the plaintiff bears the burden of establishing a *prima facie* case of discrimination, which a plaintiff may accomplish by one of two methods. *See Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) (explaining that courts analyze

1   FHA discrimination claims in the same way they analyze Title VII discrimination claims); *Costa*

2   *v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (*en banc*), *aff'd*, 539 U.S. 90 (2003); *see*

3   *Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013);

4   *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).  Under the first—the

5   *McDonnell Douglas*[3] framework—a plaintiff can establish a prima facie case by showing that

6   "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's

7   discriminatory conduct, plaintiff has suffered a distinct and palpable injury."  *Harris v. Itzhaki*,

8   183 F.3d 1043, 1051 (9th Cir. 1999).  Under the second, a plaintiff can establish a *prima facie*

9   case by showing direct or circumstantial evidence of discriminatory intent.  *See Pac. Shores*

10  *Properties*, 730 F.3d at 1158; *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

11  Here, under either method, Plaintiff has established a *prima facie* case of disparate treatment

12  under the FHA.  Under the first method, Plaintiff alleges that Defendants intentionally

13  discriminated against him because of his race, which is one of the protected classes under the

14  FHA.  Plaintiff also alleges he has suffered a distinct and palpable injury because he claims that

15  he has been evicted, that he has faced reputational harm, and that he has suffered financial harm.

16       Under the second method, Plaintiff has demonstrated that racial animus was a motivating

17  factor behind Defendants' actions and offers circumstantial evidence of Defendants'

18  discriminatory intent.  Plaintiff explains that Defendants' proffered reason for evicting him—that

19  Plaintiff assaulted a fellow resident—was false.  Plaintiff asserts that this was because the resident

20  who reported the assault lied about it, and Defendants should have known that the resident was an

21  unreliable source because of the resident's well known mental health problems.  Plaintiff adds

22  that Defendants lacked any proof for the assault allegations on which they based their eviction

23  decision and when Plaintiff insisted that the allegations were false, the Tuscan office manager

24  _____

25  [3] This refers to the burden-shifting framework that the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under that test, once a plaintiff establishes a

26  *prima facie* case of discrimination, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the defendant's actions.  *See McDonnel Douglas*, 411

27  U.S. at 802.  The burden then shifts back to the plaintiff to show that the defendants' stated reason

28  is pretext.  *See id.* at 804.

with whom he was speaking stated "[i]t doesn't matter, we want you out [of] our community." (ECF No. 9 at 5). Plaintiff also points out the timing of the assault allegations, arguing that the allegations were not brought to his attention until after Tuscan's management received reports of the underlying racial altercation at Becca's.

Plaintiff also identifies similarly situated individuals who were treated more favorably than him. For example, Plaintiff compares Defendants' delayed response to his reports regarding the racial altercation at Becca's with Defendants' swift response to the false assault allegation. Despite Plaintiff's reports and reports from witnesses, Defendants did nothing in response to the racial altercations. However, the resident who alleged that Plaintiff assaulted him provided no evidence, never called the police, did not receive medical attention, and did not file criminal charges, yet Defendants responded by evicting Plaintiff. Plaintiff contrasts this with an incident in which another community member was arrested publicly for assaulting his spouse. When Plaintiff asked if the arrested community member would be evicted, the Tuscan leasing manager stated "[t]hat's a criminal offense and has nothing to do with Tuscan Highlands Apartments." (ECF No. 1-1 at 4). Considering the allegations in the complaint in their entirety, and interpreting all inferences in favor of Plaintiff, the Court concludes Plaintiff has alleged sufficient facts to state a claim of disparate treatment under 42 U.S.C. § 3604(b) of the FHA.

### D.    Disparate impact in violation of the Fair Housing Act.

A plaintiff can also establish an FHA discrimination claim under a theory of disparate impact. *Gamble v. City of Escondido*, 104 F.3d 300, 304–05 (9th Cir. 1997). Under the disparate impact theory, the FHA "forbids actions by private or governmental bodies that create a discriminatory effect upon a protected class or perpetuate housing segregation without any concomitant legitimate reason." *Ave. 6E Invs., LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 503 (9th Cir. 2016). Here, Plaintiff does not allege that Defendants' actions create a discriminatory effect upon a protected class of people. Instead, his allegations are confined to actions that Defendants' took against him and that impacted him personally. The Court thus dismisses this claim without prejudice.

### E.    *Negligence.*

"Negligence is failure to exercise that degree of care in a given situation which a reasonable man under similar circumstances would exercise." *Driscoll v. Erreguible*, 87 Nev. 97, 101 (1971). To prevail on a negligence claim under Nevada law, a plaintiff must establish four elements: "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Evans v. Hawes*, No. 2:22-cv-02171-JAD-DJA, 2024 WL 810886, at *14 (D. Nev. Feb. 26, 2024). "Any given act may be intentional or it may be negligent, but it cannot be both. Intent and negligence are regarded as mutually exclusive grounds for liability." *Lewis v. Dirt Sports LLC*, 259 F.Supp.3d 1039, 1046 (D. Ariz. 2017) (quoting Dan B. Dobbs, Paul T. Hayden, and Ellen M. Budnick, *The Law of Torts*, § 31 (2d ed.)).

Here, Plaintiff has not alleged a colorable negligence claim against Defendants. Plaintiff alleges that Defendants owed him a duty to adequately address his complaints and that they breached that duty by not addressing them and instead evicting him. So, the same allegations that form the basis for Plaintiff's disparate treatment and wrongful eviction claims also form the basis for his negligence claim. But those allegations describe intentional actions, not negligent ones. The Court dismisses Plaintiff's negligence claim without prejudice.

### F.    *Defamation*.

Defamation encompasses both slander (spoken) and libel (written) defamatory statements. *Flowers v. Carville*, 292 F.Supp.2d 1225, 1232 n.1 (D. Nev. 2003). To state a claim for defamation, Plaintiff must allege the following elements "(1) a false and defamatory statement by [a] defendant concerning the plaintiff; (2) an unprivileged publication a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Rosen v. Tarkanian*, 453 P.3d 1220, 1225 (Nev. 2019); *see also* Nev. Rev. Stat. § 200.510(1) (defining libel). Whether a statement is capable of a defamatory construction is a question of law for the court to decide. *Branda v. Sanford*, 97 Nev. 643, 646 (1981). "A statement is defamatory when, '[u]nder any reasonable definition[,] such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to

contempt.'" *Posadas v. City of Reno*, 109 Nev. 448, 453 (1993) (*quoting Las Vegas Sun v. Franklin*, 74 Nev. 282, 287 (1958)). "In determining whether a statement is actionable for the purposes of a defamation suit, the court must ask whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 715 (2002) (internal citations omitted).

Some classes of defamatory statements—known as "defamation *per se*"—are considered so likely to cause serious injury to reputation and pecuniary loss that these statements are actionable without proof of damages. *K-Mart Corp. v. Washington*, 866 P.2d 274, 284 (Nev. 1993) (overruled in part on other grounds). A statement is considered defamation per se, "i.e., actionable without a showing of such special damages only if it falls into one of usually four categories: (1) imputations that plaintiff has committed a crime; (2) imputations that would injure plaintiff's trade, business or office; (3) imputations that the plaintiff has contracted a loathsome disease; and… (4) imputations of unchastity in a woman." *Branda*, 97 Nev. at 646.

Plaintiff alleges that Defendants defamed him by falsely stating that Plaintiff had been the instigator in the February 2022 incident and that Plaintiff had assaulted another resident. The second false statement—that Plaintiff had assaulted another resident—would constitute defamation *per se* because it imputes that Plaintiff committed a crime. But Plaintiff does not allege that Defendants made an unprivileged publication of these statements, which is an element of defamation. Plaintiff alleges that Defendants published the statements to him, but publications must be to a third party to constitute defamation. Additionally, while Plaintiff alleges that Defendants placed a notice of eviction on his door that his neighbor saw, Plaintiff does not allege that the notice included the false statements. Finally, while Plaintiff asserts that Defendants published false statements to TransUnion, Equifax, and Experian, Plaintiff only alleges that Defendants informed those third parties that Plaintiff had been evicted, not about the circumstances of that eviction. The Court finds that Plaintiff has not alleged a colorable claim for defamation or defamation *per se* and dismisses this claim without prejudice.

## <u>ORDER</u>

**IT IS THEREFORE ORDERED** that Plaintiff's first amended complaint (ECF No. 9) is now the operative complaint.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to send Plaintiff a copy of this order.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to issue summonses for: (1) Tuscan Highlands LLC; (2) Schulman Properties; and (3) Winnie Schulman.

**IT IS FURTHER ORDERED** that the following claims shall proceed:

- Plaintiff's NRS 118A.390 wrongful eviction claim as alleged against Tuscan Highlands LLC; Schulman Properties; and Winnie Schulman.
- Plaintiff' FHA disparate treatment claim as alleged against Tuscan Highlands LLC; Schulman Properties; and Winnie Schulman.

**IT IS FURTHER ORDERED** that the following claims are dismissed without prejudice:

- Plaintiff's constructive eviction claim.
- Plaintiff's FHA disparate impact claim.
- Plaintiff's negligence claim.
- Plaintiff's defamation claim.

**IT IS FURTHER ORDERED** that service must be accomplished on or before **April 14, 2025**. *See* Fed. R. Civ. P. 4(m).

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to deliver the following to the U.S. Marshals Service ("USMS") for service:

- Three copies of the amended complaint filed at ECF No. 9.
- The summonses issued to Tuscan Highlands LLC; Schulman Properties; and Winnie Schulman.
- A copy of this order.

1    **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to send Plaintiff

2    three blank copies of form USM-285.[4]

3    **IT IS FURTHER ORDERED** that Plaintiff must complete one USM-285 form for each

4    Defendant and provide an address where each Defendant can be served with process.  Plaintiff

5    shall have until **February 4, 2025,** to provide his completed USM-285 forms to the USMS.

6    **IT IS FURTHER ORDERED** that upon receipt of the issued summonses, the USM-285

7    forms, and the operative complaint—and pursuant to Federal Rule of Civil Procedure 4(c)(3)—

8    the USMS shall attempt service upon Defendants.

9    **IT IS FURTHER ORDERED** that, within twenty-one days after receiving from the

10    USMS a copy of the form USM-285 showing whether service has been accomplished, Plaintiff

11    must file a notice with the Court identifying whether the Defendants were served.  If Plaintiff

12    wishes to have service again attempted on an unserved Defendant, he must file a motion with the

13    Court identifying the unserved Defendant and specifying a more detailed name and/or address for

14    said Defendant or whether some other manner of service should be attempted.

15

16    DATED: January 14, 2025

17    _____

18    DANIEL J. ALBREGTS
     UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28

---

[4] The USM-285 form is also available at: https://www.usmarshals.gov/resources/forms/usm-285-us-marshals-process-receipt-and-return.